IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

MECHEL BLUESTONE, INC., and
MECHEL MINING OAO,

                Plaintiffs,

v.                                CIVIL ACTION NO.   5:13-cv-33881

WEIR INTERNATIONAL, INC.,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant's Motion to Dismiss Plaintiffs' Amended Complaint* (Document 21), attached exhibits,[1] and *Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiffs' Amended Complaint* (Document 22), the *Plaintiffs' Answering Memorandum in Opposition to Defendant's Motion to Dismiss Amended Complaint* (Document 26) and the *Reply Memorandum in Support of Defendant's Motion to Dismiss Amended Complaint* (Document 28) and attached exhibit. For the reasons stated herein, the Court finds that the Defendant's motion to dismiss must be **GRANTED IN PART AND DENIED IN PART.**

---

1 In reviewing Weir's motion to dismiss, the Court has considered the Merger Agreement and the documents related to Weir's suit against Justice in Delaware, all attached as exhibits to Defendants' motion to dismiss and/or Reply, as they are integral to the complaint, explicitly relied on, and authentic.   *See Blankenship v. Manchin*, 471 F.3d 523, 526, note 1 (4th Cir. 2006) (noting that the court would consider an article attached to the defendant's motion to dismiss because it was integral to, and relied upon in, the complaint and its authenticity was not questioned); *Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir.1999) (stating that "a court may consider [a document outside the complaint] in determining whether to dismiss the complaint" where the document "was integral to and explicitly relied on in the complaint" and its authenticity has not been challenged.)

1

## I. FACTUAL BACKGROUND

The Plaintiff brought this suit via a *Complaint* (Document 1) filed in this Court on December 30, 2013. After the Defendant filed a motion to dismiss, the Plaintiff sought leave to amend its complaint "to more clearly articulate the bases for its claims in light of the issues raised in Weir's motion to dismiss" and to assert a new claim. (Mem. in Supp. of Mot. to Amend, at 3, Document 16.) The Court granted leave for the Plaintiff to file its *Amended Complaint* (Document 19), which the Defendant promptly moved to dismiss.

This case arises as a corollary to a contract dispute between Mechel Bluestone, Inc., and Mechel Mining OAO (Mechel) and the James C. Justice Companies, et al. (Justice).[2] Mechel and Justice entered into the Agreement and Plan of Merger (Merger Agreement) on March 16, 2009. (Merger Agreement, att'd as Ex. 1 to Mot. to Dismiss, Document 21-1.) Pursuant to the Merger Agreement, "Mechel purchased from Justice certain coal properties and associated assets located in West Virginia with preferred shares of Mechel OAO and cash." (Am. Comp. at 1.) Prior to Mechel and Justice entering into the Merger Agreement, Weir was retained to "evaluate and quantify the base volume of coal reserves and resources that Justice was contemplating selling to Mechel." (*Id.* at ¶ 11.) In 2008, it produced a lengthy report in compliance with industry standards. (*Id.* at ¶¶ 7, 10–13, 33.) That report evaluated the volume of coal reserves and resources to be transferred in the Merger Agreement and was attached thereto. (*Id.* at ¶¶ 11,14, 16.)

---

2 Both Mechel and Justice include many affiliates, subsidiaries, and individuals. For ease of reference and clarity, the Court will refer to all Mechel-associated entities as "Mechel" and all Justice-associated entities as "Justice."

Under the terms of the Merger Agreement, Mechel agreed to make a "Contingent Payment" for additional coal reserves identified after the Merger Agreement through a two-year drilling program. (*Id.* at 1–2.) Justice was responsible for the Drilling Program. (Merger Agreement at 11–12.) Defendant Weir International was to be involved as an independent engineering firm. (*Id.* at 11–13.) Mechel alleges that Weir's evaluation of the additional reserves, produced in the form of a letter addressed to Justice, did not comply with industry standards, included a great deal of coal that could not be economically mined, and included coal that was not conveyed to Mechel in the Merger Agreement. (Am. Compl. at ¶¶ 31, 33–40.)

The Merger Agreement contains the following provisions as relevant to the contingent payment, the drilling program, and the engineering firm:

> "Contingent Payment" means an amount in cash equal to the Contingent Reserves multiplied by the Agreed Contingent Price Per Ton.
>
> "Contingent Reserves" means that number of tons of in-place reserves and resources contained within the BCG Mining Complexes in the Drilling Area that, after the appropriate level of drilling and other work (all as determined by the Engineering Firm) completed prior to the second anniversary of the Start Date, are from time to time certified by the Engineering Firm (in a certificate, substantially similar to the attached Exhibit A [Weir's 2008 Report], which must be issued within two months after the second anniversary of the Start Date) to be (i) proven and probable reserves or (ii) measured and indicated resources in accordance with the same criteria used in the Initial JORC[3] Report (which are the JORC Code Guidelines)…The determination of any Engineering Firm shall be dispositive and binding upon the parties absent manifest error….
>
> "Drilling Program" means a drilling program in the Drilling Area where (i) the proposed hole locations, number of holes and depth of holes are determined by Seller from time to time prior to

---

3 "JORC" refers to an international industry standard for reporting mineral exploration results, resources, and reserves. (*See* Am. Compl. at ¶ 10.)

3

>the second anniversary of the Closing Date, and (ii) the results are evaluated by the Engineering Firm….Prior to commencement of the Drilling Program, Seller shall deliver to BVI Sub a schedule of the proposed two-year plan which will identify the location and during of any drilling or other work that will be conducted for the identification of Contingent Reserve….All costs of such work shall be borne by Seller, provided, that at the conclusion of the Drilling Program, Buyers will compensate Seller of 50% of Seller's out-of-pocket costs of any such work for which Buyers have been provided detailed support and explanation….
>
>"Engineering Firm" means Weir International, Inc., or such other independent engineering firm selected by the Seller and reasonably acceptable to BVI Sub in the manner specified herein. BVI Sub shall be entitled to require Weir International to be replaced in accordance with the preceding sentence if it can be reasonably demonstrated that there is a reasonable basis to believe that they are not independent or have performed their work not in accordance with applicable professional standards.

(Merger Agreement at 10–13.)

In summary, Justice and Mechel agreed that Justice, with input and evaluation by Weir, would conduct a program to identify additional coal reserves, for which Mechel would provide a contingent payment in cash at specified intervals. Weir was specifically identified as the engineering firm that would participate in the Drilling Program and produce a report certifying the findings, but Justice could select another engineering firm. Mechel was entitled to seek replacement of Weir if it were not independent or if its work failed to meet professional standards.

Though Justice was responsible for the Drilling Program and was the recipient of the contested Weir Letter, Mechel contends that it had a separate contract, even if only implied, with Weir that "incorporated the requirements in the Merger Agreement." (Am. Compl. at ¶ 52.) In the alternative, Mechel alleges that it was a third party beneficiary of the agreement between Justice and Weir, which also allegedly incorporated the requirements of the Merger Agreement.

4

(*Id.* at ¶¶ 54–55.)   The provenance and terms of these alleged agreements are absent from the amended complaint.   Mechel's claims against Weir rest on a theory that Weir owed Mechel a duty to act in accordance with the standards set forth in the Merger Agreement, as well as professional standards.

Mechel asserts the following causes of action against Weir:

(1) Declaratory Judgment: Mechel claims that it "is entitled to a declaration that Weir failed to act in accordance with the duties it owed to Mechel as described in the Merger Agreement and professional standards."   (*Id.* at ¶ 47.)

(2) Professional Negligence:   Mechel claims that Weir breached duties owed to Mechel, and as a result caused damages "in no event less than the inflated Contingent Payment amount resulting from Weir's conduct and omissions described herein."   (*Id.* at ¶¶ 49–51.)

(3) Breach of Contract:   Mechel alleges that Weir breached a contract with Mechel, or to which Mechel was a third-party beneficiary, causing damages "including the costs of reviewing, investigating, and evaluating the Weir Letter, the costs of bringing this action and the costs of conducting another resource and reserve study.   Mechel will be further damaged by Weir's breach in the amount of the inflated Contingent Payment it may be required to pay Justice."   (*Id.* at ¶¶ 52–56.)

(4) Promissory Estoppel:   Mechel states that "Weir should be estopped from asserting the lack of consideration or direct contractual privity as a defense to Mechel's claim for redress."   (*Id.* at ¶ 60.)   It further claims that redress should include "contribution

toward or indemnification of any inflated Contingent Payment Justice is owed." (*Id.* at ¶ 61.)

(5) Tortious Interference with Contract: Mechel alleges that Weir's deficient report "caused a breach of contract and tortuously interfered with Mechel's business relationship with Justice." (*Id.* at ¶ 62.) Mechel alleges damages "including the costs of reviewing, investigating, and evaluating the Weir Letter, and the costs of bringing this action," and further damages "in the amount of the inflated Contingent Payment Justice is claiming it is owed." (*Id.* at ¶ 63.)

(6) Fraud: Mechel alleges that Weir's concealment of its lack of independence and its failure to comply with industry standards, together with intentional inflation of the Contingent Reserves, constitutes fraud. Mechel further alleges that Weir "worked with Justice to inflate the amount of Contingent Reserves and therefore the Contingent Payment that Justice has demanded Mechel pay."[4] (*Id.* at ¶ 69.) Mechel alleges damages based on being denied the opportunity to replace Weir, its challenge to the Weir Letter, and foregone discounts available had it made the Contingent Payment by certain deadlines. (*Id.* at ¶ 73.) It further alleges damages "if it is forced to rely on the Weir Letter as the basis for the Contingent Reserves and Contingent Payment." (*Id.*at ¶ 74.)

(7) Negligent Misrepresentation: Finally, Mechel alleges that Weir misrepresented its independence, its compliance with industry standards, and "negligently misrepresented the proper volume of Contingent Reserves, which was material to Mechel entering the

---

4 The Court notes that all parties would benefit by the presentation and consideration of allegations of joint fraudulent conduct between Justice and Weir in the same court.

6

Merger Agreement." (*Id.* at ¶¶ 76–83.) Mechel re-alleges the same damages set forth for its fraud allegations.

Aside from the "declaration that Weir failed to act in accordance with the duties it owed to Mechel under the Merger Agreement," Mechel seeks damages in the amount of the overstatement of the Contingent Payment "for which Justice obtains or otherwise perfects an enforceable claim for against Mechel," as well as its costs for investigating and challenging the Weir Letter; the foregone discount for pre-payment of the Contingent Payment; attorney's fees and professional services fees incurred in connection with this action; and pre-and post-judgment interest. (*Id.* at 23.)

Within the allegations presented to this Court, Mechel cites its currently pending lawsuit against Justice in the Delaware Court of Chancery. (*Id.* at, e.g., ¶¶ 22, 32, 45, 46, 59.) In a similarly worded Complaint, Mechel seeks declaratory judgment against Justice to, among other things, specify that "[t]he Weir Letter does not satisfy the requirements set forth in the Agreement." (DE Compl. at ¶ 50, att'd to Mot. to Dismiss as Ex. 3, Document 21-3.) Mechel also alleges that Justice breached the Merger Agreement by failing to ensure that Weir complied with the standards set forth in that Agreement and by relying on Weir's work. (*Id.* at ¶ 56.) Mechel presents fraud/misrepresentation claims against Justice based on Justice's concealment of "the fact that Weir failed to properly monitor and carry out the Drilling Program, and further failed to act independently and in accordance with professional standards in preparing its certification." (*Id.* at ¶ 67.) Mechel alleges that "Justice and Weir instead joined together to inflate the volume of Contingent reserves in an effort to extract a Contingent Payment grossly exceeding" the fair amount. (*Id.*) Mechel's alleged damages include "the costs of reviewing, investigating, and

7

evaluating the Weir letter."  (*Id.* at ¶ 71.)  In the Delaware suit against Justice, Mechel seeks a declaration that "the Weir Letter does not satisfy the requirements set forth in the [Merger] Agreement" and that "Mechel does not owe any Contingent Payment under the Agreement, or in the alternative owes an amount to be calculated based upon a new certification of Contingent Reserves to be prepared by a new mining engineering firm," the foregone prepayment discount, and "all attorney's fees and professional services fees incurred by Mechel in connection with this matter," as well as pre-judgment and post-judgment interest.  (*Id.* at 20.)

## II.   STANDARD OF REVIEW

### A.  12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.)"  *Id.*  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint."  *Erikson v. Pardus*, 551 U.S. 89, 93 (2007).  The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

8

However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Furthermore, the Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice… [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570.) In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 570.) In the complaint, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 557.) "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B.  12(b)(1)

A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. Federal courts derive their jurisdictional power to hear cases and controversies from Article III of the Federal Constitution.

It is axiomatic that a court must have subject matter jurisdiction over a controversy before it can render any decision on the merits. Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen v. United States*, 800 F.2d 393, 401 n. 15 (4th Cir.1986), rejected on other grounds, *Sheridan v. United States*, 487 U.S. 392 (1988). In this case, Weir has facially attacked Mechel's amended complaint by asserting that Mechel failed to plead compensable injury and/or that Mechel's damage claim is not ripe for adjudication. A "facial attack," questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. *Id.* If a "facial attack" is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction. *Id.* The burden of proving subject matter jurisdiction in a motion to dismiss is on the party invoking such jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991).

### III. DISCUSSION

#### A. *12(b)(6) – Dismissal With Prejudice*

Weir moves to dismiss Mechel's complaint with prejudice on the grounds that "Mechel has failed to adequately plead in each of the claims before the Court that it has suffered cognizable damage as a result of Weir's actions." (Mem. in Support at 9.) Weir argues that if the Delaware Court determines that the Weir Letter satisfies the manifest error standard of review contained in the Merger agreement, then Mechel would be unable to prove damages "attributable to alleged improper conduct on the part of Weir." (*Id.*) On the other hand, if the Delaware Court finds in Mechel's favor, "Mechel will not be obligated to make the Contingent Payment" and will not

suffer damages.  (*Id.*)  Mechel responds that it has "*already suffered* concrete damages arising out of the inflated Contingent Reserves certified by Weir."  (Resp. at 13) (emphasis in original.)  Specifically, Mechel asserts that Justice's claim that Mechel owes it over $165 million, Mechel's alleged inability to remove Weir as the Engineering firm, the loss of the discount for prepayment of the Contingent Payment, and the costs associated with reviewing the Weir Letter and bringing suit are all present damages.  (*Id.* at 14–16.)  Mechel further argues that Weir's position rather conveniently insulates it from any potential damages: if Mechel has no damages unless and until it prevails in Delaware, and would have no remaining damages if it prevails in Delaware, then Weir could never be liable for its alleged breach.  In reply, Weir reiterates its position that Mechel has not alleged recoverable damages.

Accepting the factual allegations contained in the amended complaint as true, Mechel's claims do include potentially recoverable damages.  Mechel asserts that the Weir Letter, relied upon by Mechel and Justice, did not comport with professional standards and breached a duty owed directly to Mechel.  Weir does not challenge the adequacy of Mechel's claims with respect to the elements of duty or breach.  Mechel alleges that a report prepared by Weir in compliance with the standard of care would have resulted in a much lower Contingent Payment demand.  Should Mechel be required, under the terms of the Merger Agreement, to make that payment to Justice, Weir could be liable for some or all of the additional costs incurred due to its allegedly deficient report.  In other words, Mechel has included factual allegations that, taken as true, would impose on Weir a standard of care more stringent than the manifest error standard contained in the Merger Agreement.  Weir could also be liable for costs associated with Mechel's investigation and litigation arising from the allegedly flawed Weir Letter.  Because Mechel's

11

complaint alleges cognizable damages, Weir's motion to dismiss with prejudice for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) must be **DENIED.**

### B. 12(b)(1) Dismissal Without Prejudice

In the alternative, Weir moves to dismiss Mechel's amended complaint without prejudice on the ground that the claims are not ripe. Weir asserts that "Mechel's alleged damages are speculative and contingent upon the outcome of the Delaware Action." (Mem. in Support at 13.) Weir points out that "the determination as to the amount Mechel will be required to pay under the Merger Agreement as a Contingent Payment, if anything, is presently pending before the Court in the Delaware Action." (*Id.*) Further, Weir argues, "any conceivable claim of hardship resulting from this Court withholding consideration of the Amended Complaint is far outweighed by the considerable risk of inconsistent results if this case is litigated simultaneously with the Delaware Action." (*Id.* at 14.)

Mechel responds that it "faces a very concrete, particularized, and imminent invasion of its protected interest." (Resp. at 19.) Mechel argues that its claim for damages "in the amount of the inflated Contingent Reserves [is] ripe for review right now," and "[t]hat Justice's claims are pending before the Delaware Court does not render Mechel's damages 'hypothetical.'" (*Id.* at 18) It argues in the alternative that nominal damages can be inferred from the allegation of the breach of a duty and breach of contract, sufficient to overcome a motion to dismiss. (*Id.* at 17–18.) Weir replies that case law supports its position that damages that are "contingent on the outcome of a separate, pending lawsuit [are] not ripe for adjudication." (Reply at 5.) It further reiterates that "having two cases proceed simultaneously, one of which may not even be necessary depending on the outcome of the other, is contrary to the interests of judicial economy and imposes costs on the

parties that may otherwise be avoided," and urges the Court to stay the proceedings here even if it does not grant the motion to dismiss. (*Id.* at 6–7.)

In support of its position, Mechel cites a recent case in which the District of South Carolina denied a motion to dismiss based on ripeness where related arbitration claims were pending. (*Id.* at 19.) In that case, a home construction firm was engaged in arbitration with the homeowner pursuant to the contract at the same time it brought suit against an engineering firm. *See Pulte Home Corp. v. S & ME, Inc.*, 2013 WL 4875077 (D.S.C. Sept. 11, 2013). As Weir noted, however, the court *did* find that any damages arising out of the arbitration proceeding were not ripe and stayed the case pending the conclusion of the arbitration. *Id.* at *2. A stay, rather than dismissal, was appropriate in part because the Plaintiff sought "recovery for some repairs and related expenses and losses (distinct from litigation expenses) that it ha[d] already incurred" and claims for those damages were ripe. *Id.*

We lack extensive guidance for evaluating issues of ripeness under these circumstances, involving related litigation pending in a state court outside the district. As a general matter, "[t]he doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form.'" *Miller v. Brown*, 462 F.3d 312, 318-19 (4th Cir. 2006) (citing *Rescue Army v. Mun. Court of L.A.,* 331 U.S. 549, 584 (1947). Courts are instructed to "balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." *Id.* at 319 (internal quotation marks and citations omitted). "A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Id.* "Whether an indemnification issue is ripe for adjudication depends on the facts and circumstances of the case under consideration." *A/S J.*

13

*Ludwig Mowinckles Rederi v. Tidewater Const. Co.*, 559 F.2d 928, 932 (4th Cir. 1977). Further, "[a]n important factor in considering ripeness is whether resolution of the tendered issue is based upon events or determinations which may not occur as anticipated." *Id.* (noting that the plaintiffs in ongoing personal injury and wrongful death actions were not "parties to or in privity with any party to the instant case, and [would] not be bound by the district court's findings and judgment in this case on the issues of negligence and responsibility for the casualty").[5]

In this matter, the outcome of the pending litigation between Mechel and Justice in Delaware could eliminate most or all of the potential damages in this case. Thus, the action is "dependent on future uncertainties." *See Miller*, 462 F.3d at 319. Should Mechel prevail in Delaware, it will not be required to pay the allegedly inflated Contingent Payment. Mechel also seeks to recover for the foregone prepayment discount and any legal and professional expenses incurred from Justice. Should Mechel prevail on all issues in Delaware, no damages will remain to be collected from Weir.[6] Mechel is not entitled to simultaneously seek the same relief from two defendants in separate court systems. To permit it to do so could result in a windfall recovery of double damages.

Dismissing this case without prejudice to await the outcome of the Delaware case causes little, if any, hardship to either party. Unlike the contractor in *Pulte*, Mechel has not already incurred non-litigation expenses that are not part of the separate proceeding. Mechel alleges that it incurred the costs of reviewing and evaluating the Weir Letter and conducting a new resources study (though it is not clear whether that study has been completed), but those are costs it seeks to

---

5 That court further pointed out that additional parties could be brought in to the other pending cases, a circumstance that could lead to more efficient resolution in the present case as well.
6 Only litigation expenses already incurred in this matter would remain unrecovered. Given the Court's finding that Mechel's claims are not ripe and must be dismissed, Mechel cannot recover litigation expenses related to this case from Weir.

recover from Justice. Mechel will incur only litigation expenses until the resolution of the Delaware case, and those expenses will be lower than they would be if both cases proceeded simultaneously. Contrary to Mechel's suggestion, the damages it seeks are not "imminent" and ripe for resolution because they may never come to pass if Mechel is successful in Delaware. The matters presented are not currently fit for judicial resolution.[7] Mechel's claims against Weir depend on the uncertain outcome of its contract dispute with Justice.[8] Accordingly, they are not yet ripe for consideration and must be **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(1).

## CONCLUSION

WHEREFORE, following careful consideration and for the reasons stated herein, the Court hereby **ORDERS** that the *Defendant's Motion to Dismiss Plaintiffs' Amended Complaint* (Document 21) be **GRANTED IN PART AND DENIED IN PART.** Specifically, to the extent the Defendant seeks to dismiss the Plaintiffs' amended complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the motion is **DENIED.** However, to the extent the Defendant seeks to dismiss the Plaintiffs' amended complaint without prejudice pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the motion is **GRANTED.**

Accordingly, the Court hereby **ORDERS** that the Plaintiffs' *Amended Complaint* (Document 19) be **DISMISSED WITHOUT PREJUDICE**. The Court further **ORDERS** that any pending motions in this matter be **TERMINATED AS MOOT.**

---

[7] Weir rightly stated, and Mechel does not appear to dispute, that the claim for declaratory relief cannot proceed independent of the substantive claims for relief in this situation.

[8] Though this case was filed before the case against Justice, the same is not true of the proceedings in Delaware. This matter cannot be effectively considered unless and until Mechel is required to pay Justice the allegedly inflated Contingent Payment. Whether or not Weir breached a duty *owed to Mechel* in reaching that allegedly inflated number has little bearing on whether Justice breached the Merger Agreement as alleged in the Delaware complaint.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER: August 4, 2014

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA